IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| BURT FOSKEY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civ. No. 09-535-SLR |
| | ) |
| CPL. LITTLE, et al., | ) |
| | ) |
| Defendants. | ) |

Burt Foskey. Plummer Community Corrections Center, Wilmington, Delaware. Pro se Plaintiff.

Marc P. Niedzielski and Michael F. McTaggart, Deputy Attorneys General, Delaware Department of Justice, Wilmington, Delaware. Counsel for Defendants.

**MEMORANDUM OPINION**

Dated: August 5, 2011
Wilmington, Delaware

ROBINSON, District Judge

## I. INTRODUCTION

Plaintiff Burt Foskey ("plaintiff"), an inmate at the Plummer Community Corrections Center, Wilmington, Delaware, filed this civil rights complaint pursuant to 42 U.S.C. § 1983. (D.I. 2) Presently before the court is defendants' motion for summary judgment. (D.I. 36) The court has jurisdiction pursuant to 28 U.S.C. § 1331. For the following reasons, the court will grant defendants' motion.

## II. PROCEDURAL AND FACTUAL BACKGROUND

The complaint alleges that on July 19, 2008, Delaware State Police officers defendants Cpl. Little ("Little"), Cpl. Carlisle ("Carlisle"), and Trooper Vernon ("Vernon") used excessive force in violation of the Fourth Amendment of the United States Constitution when pursuing plaintiff following a robbery.[1] More particularly, plaintiff alleges that when Little, the K-9 handler, released the police K-9, it attacked plaintiff and held him until officers arrived. Once the officers arrived and the K-9 was placed on a lead, it attacked plaintiff again, without command or direction from Little. Plaintiff was hospitalized and treated for the injuries inflicted by the K-9. (D.I. 2)

The facts before the court are that on July 19, 2008, plaintiff and his girlfriend committed a robbery at a convenience store.[2] Plaintiff's girlfriend told the store clerk that an occupant of the getaway vehicle had a weapon, and they would use it. The couple fled the scene and were followed by witnesses who had called 911 and were

---

[1]Excessive force claims arising out of an arrest are analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386 (1989).

[2]Plaintiff pled guilty to robbery in the first degree, conspiracy in the second degree, and resisting arrest. (D.I. 37, Foskey ex. 1)

reporting the couple's movements. Plaintiff realized they had been followed when he saw police lights. He panicked, grabbed the bag that contained the proceeds of the robbery, and ran into a wooded area. The area was swampy, marshy, thick with brush and briers, and difficult to traverse. As of 8:46 a.m., Little and the K-9 "Yukon" were tracking plaintiff in the difficult terrain.[3] Little said in a loud voice, "State Police come out" and, when he received no response, stated in a loud voice that he was releasing the K-9. Little took the K-9 off the lead as of 8:47 a.m. Plaintiff heard the police calling for him to come out, and warning him that the K-9 would be released if he did not. Plaintiff responded that he was coming out, but the officers did not hear him. Within a matter of minutes the K-9 made contact with the plaintiff and bit plaintiff in the right shoulder. Plaintiff testified that he was either fighting with the K-9, or protecting himself from the K-9, for "a good ten, fifteen minutes before anybody even got there to control the dog." Plaintiff understands that a trained K-9 will hold an individual when movement stops and will not bite, but the K-9 was trying to grab his throat. (D.I. 35, D398-406, D411; D.I. 37, Foskey dep. at 9-12, 23, 29, Little declaration)

Little worked his way toward plaintiff, moving as quickly as he could through the briers and brush. Little saw that the K-9 "had engaged" plaintiff in the right shoulder, attached the K-9 to the lead, and gave the command to release plaintiff. Carlisle arrived, they attempted to arrest plaintiff, and the officers ordered plaintiff to move but plaintiff was stuck in the marsh. Little pulled the K-9 back to the right, as far as possible

---

[3]Yukon has successfully completed police dog training from at least January 2005 through December 2008 and had inservice canine patrol training on July 16, 2008, a mere three days prior to the events of July 19, 2008. (D.I. 35, D440-644)

from plaintiff. Plaintiff began to move his head around and, without warning, the K-9 suddenly broke free and grabbed plaintiff's face. Little immediately pulled the K-9 off plaintiff and held his position. Plaintiff testified that the K-9 was not directed to bite his face. Carlisle carried plaintiff out of the marsh, and plaintiff was flown by the Delaware State Police helicopter to Christiana Hospital for treatment. Plaintiff sustained a very large deep dog bite wound to the right deltoid area, a five centimeter laceration to the front of the left hand, and two small lacerations to the face. Plaintiff remained in the hospital until July 25, 2008, for treatment of his injuries.[4] (D.I. 35, D5, D66, D399; D.I. 37, Foskey dep. at 11-12, 14, Little declaration, Carlisle declaration)

Plaintiff testified that he was not mistreated by defendants and that all his injuries were inflicted by the K-9. With regard to Little, plaintiff testified that Little did not hit him and, when the K-9 grabbed plaintiff's face, there was "a lot of yelling." He believed that Little was trying to get the K-9 off him, and did not "intentionally allow it to happen, but it's something that he's suppose have control over." (D.I. 37, Foskey dep. at 15, 27)

Plaintiff testified that Carlisle and Vernon are not K-9 officers and were not in control of any animal. When questioned about Vernon, plaintiff responded, "I don't really remember Trooper Vernon to be honest with you." According to Vernon, he had no contact with plaintiff. (D.I. 37, Foskey dep. at 26-27, Vernon declaration)

---

[4]While hospitalized, plaintiff underwent irrigation and debridement of devitalized soft tissue at the right shoulder, repair of extensive right deltoid muscle laceration/ transection, partial closure/layered of an extensive right shoulder wound, irrigation and closure of three puncture wounds at the right shoulder, irrigation and closure of a left hand puncture wound, and evaluation and repair of facial wounds. (D.I. 35, D3)

3

With regard to Carlisle, plaintiff testified that he does not recall being mistreated by Carlisle and that Carlisle was the individual who carried him out of the wooded area. Carlisle's sworn statement concurs that he had no adverse contact with plaintiff and that he carried plaintiff out of the wooded marsh to await medical assistance. (D.I. 37, Foskey dep. at 26, Carlisle declaration)

## III. STANDARD OF REVIEW

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[5] Fed. R. Civ. P. 56(a). The moving party has the initial burden of proving the absence of a genuinely disputed material fact relative to the clams in question. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Material facts are those "that could affect the outcome" of the proceeding, and "a dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury to return a verdict for the nonmoving party." *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460–461 (3d Cir. 1989). Pursuant to Rule 56(c)(1), a non-moving party asserting that a fact is genuinely

---

[5]Rule 56 was revised by amendment effective December 1, 2010. "The standard for granting summary judgment remains unchanged," and "[t]he amendments will not affect continuing development of the decisional law construing and applying these phrases." Fed. R. Civ. P. 56 advisory committee's note to 2010 Amendments.

4

disputed must support such an assertion by: "(A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . ., admissions, interrogatory answers, or other materials; or (B) showing that the materials cited [by the opposing party] do not establish the absence . . . of a genuine dispute . . ." Fed. R. Civ. P. 56(c) (1).

When determining whether a genuine issue of material fact exists, the court must view the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor. *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007). A dispute is "genuine" only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson*, 477 U.S. at 247–249. *See Matsushita Elec. Indus. Co.*, 475 U.S. at 586–587 ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"). If the nonmoving party fails to make a sufficient showing on an essential element of its case with respect to which it has the burden of proof, the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. at 322.

Defendants move for summary judgment on the grounds that there is no evidence of a Fourth Amendment violation and, even if a Fourth Amendment violation was established, defendants are entitled to qualified immunity. Plaintiff opposes the motion.

## IV. DISCUSSION

The complaint alleges the use of excessive force in violation of the Fourth Amendment by the arresting officers when plaintiff was attacked by a police K-9.

5

Defendants argue that summary judgment is appropriate inasmuch as there is no evidence that any defendant used excessive force. Plaintiff opposes the motion and argues that defendants are responsible for violating his constitutional rights and for showing a "non-caring attitude and failure to properly train and supervise the police K-9."

"[C]laims that law enforcement officers have used excessive force . . . in the course of an arrest . . . should be analyzed under the Fourth Amendment and its 'reasonableness' standard. . . ." *Graham v. Connor*, 490 U.S. 386, 395 (1989). "[T]he 'reasonableness' inquiry in an excessive force case is an objective one: the question is whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Id.* at 397; *Kopec v. Tate*, 361 F.3d 772, 777 (3d Cir. 2004); *Mosley v. Wilson*, 102 F.3d 85, 95 (3d Cir. 1996). A court must judge the reasonableness of particular force "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. The reasonableness of an officer's use of force is measured by "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* "Other relevant factors include the possibility that the persons subject to the police action are themselves violent or dangerous, the duration of the action, whether the action takes place in the context of effecting an arrest, the possibility that the suspect may be armed, and the number of persons with whom the police officers must contend at one time. *Moore v. Vangelo*, 222 F. App'x

167, 170 (3d Cir. 2007) (not published) (citing *Sharrar v. Felsing*, 128 F.3d 810, 822 (3d Cir. 1997)).

The use of a police dog to hold a suspect is not per se unreasonable. *Moore v. Vangelo*, 222 F. App'x 167, 170 (3d Cir. 2007) (not published) (citations omitted). Additionally, while injuries are not unusual when a police dog is used, the use of K-9 force to apprehend suspects is reasonable where the *Graham* factors weigh in favor of the police. *Id.* See also *Jarrett v. Town of Yarmouth*, 331 F.3d 140, 150 (1st Cir. 2003) (officer's decision to release K-9, in order to arrest a fleeing traffic violator, was not an exercise of objectively unreasonable force); *Mendoza v. Block*, 27 F.3d 1357, 1363 (9th Cir. 1994) ("[u]sing a police dog to find [a fleeing bank robber believed to be armed], and to secure him until he stopped struggling and was handcuffed, was objectively reasonable under these circumstances" despite the fact that the dog bit both arms, due to the suspect struggling, and severely injured him); *Matthews v. Jones*, 35 F.3d 1046, 1052 (6th Cir. 1994) (use of a dog to apprehend a suspect fleeing into woods was objectively reasonable); *Barton v. Eichelberger*, 311 F. Supp. 1132, 1145 (M.D. Pa. 1970) (use of a dog to grab and hold a fleeing suspect was objectively reasonable).

The reasonableness of defendants' conduct in their use of force is measured by "careful attention to the facts and circumstances" of this case. *See Graham*, 490 U.S. at 396. Plaintiff testified, and the record reflects, that no police officer at the scene, other than the K-9, used physical force against plaintiff. By plaintiff's own account, defendants did not mistreat him. Notably, it is uncontroverted that only Little was in control of the K-9. Hence, no reasonable jury could find that Carlisle and Vernon used

7

excessive force or in any manner violated plaintiff's constitutional rights. Therefore, the court will grant their motion for summary judgment.

At issue is whether Little used excessive force, through the K-9, in violation of the Fourth Amendment. With regard to the first interaction between plaintiff and the K-9, the use of a K-9 to aid in the apprehension of a fleeing suspect is not a per se constitutional violation. *Moore v. Vangelo*, 222 F. App'x 167 n.2 (3d Cir. 2007) (not published) (the deployment of a police dog without a verbal warning is not per se objectively unreasonable). The facts of record include the following: (1) police had been informed that plaintiff and his girlfriend had committed a robbery; (2) during the commission of the robbery, plaintiff and his girlfriend had indicated they had a weapon and would use it; and (3) plaintiff fled from officers into a wooded area. Given these facts, the use of the K-9 to apprehend and detain plaintiff was objectively reasonable.[6] Indeed, to any objective observer, plaintiff appeared to pose a safety threat, and his attempt to evade arrest by flight cannot be denied.[7] *See* Graham, 490 U.S. at 396.

While it took some time for Little to locate plaintiff, the facts do not indicate the delay was deliberate. There is no dispute that the K-9 seriously injured plaintiff's right shoulder. Yet, during this time plaintiff, by his own admission, either fought or defended himself from the K-9, and did not lie still despite his knowledge that the K-9 would bite him if he moved. In addition, the terrain made it difficult to reach plaintiff quickly but, as soon as Little located plaintiff and the K-9, he placed the K-9 on a lead, gave the

---

[6]It does not appear that plaintiff was armed at the time of arrest. Nonetheless, officers had been advised that the robbery suspects were armed.

[7]Plaintiff pled guilty to resisting arrest. (D.I. 37, Foskey ex. 1)

8

command to release, and moved the K-9 away from plaintiff. When considering the facts and circumstances, the court finds that the use of the K-9 to apprehend plaintiff was not an exercise of unreasonable force.

With regard to the second contact between plaintiff and the K-9, it is uncontroverted that Little did not give a command to the K-9 to bite and/or hold plaintiff. Little had pulled the K-9 away from plaintiff, so that he and Carlisle could arrest plaintiff. The terrain posed problems, however, and plaintiff had difficulty moving from the area, despite the fact that he was not handcuffed or restrained in any matter. When plaintiff moved his head around, it appears that the K-9 perceived the actions as a threat, and engaged plaintiff's face. The record reflects that Little took immediate action to remove the K-9 from plaintiff. Notably, plaintiff testified that he did not believe that Little meant for the K-9 to engage him.[8] The wounds to plaintiff's face are described in the medical records as two small lacerations to the face.

The record is clear that plaintiff was not restrained during his attempts to move from the muddy area, and that he was moving his head when the K-9 engaged in the second contact. Plaintiff's and Little's statements that Little immediately pulled the K-9 off plaintiff are completely consistent and reveal no genuine factual dispute. Based on this record, the court concludes that no genuine disputes of material fact remain. The court finds that Little followed procedures and training, and the K-9 attacked plaintiff

---

[8] In his opposition, plaintiff argues that Carlisle failed to protect him. It is undisputed, however, that the K-9 was under the control of Little and no other officer. Moreover, the second contact happened suddenly, making it difficult, if not impossible, for Carlisle to have a reasonable opportunity to prevent the K-9 from making the second contact.

uncommanded after plaintiff moved his head around. A reasonable jury could not find that Little used excessive force through the K-9.[9]

For the above reasons, the court finds that any force that may have been applied does not rise to the level of a constitutional violation. Therefore, the court will grant defendants' motion for summary judgment.[10]

## V. CONCLUSION

Based upon the foregoing, the court will grant defendants' motion for summary judgment.

An appropriate order will issue.

---

[9] Even if the second contact was considered excessive force, Little is entitled to qualified immunity. See Neeley v. Samis, 183 F. Supp. 2d 672, 682 (D. Del. 2002). (Police officers were entitled to qualified immunity for purposes of plaintiff's § 1983 action alleging use of excessive force in making arrest; reasonable officers could not know their actions violated any law where no persuasive case law supported notion that officers should be responsible for an uncommanded attack by a police dog.).

[10] Plaintiff also raised a failure to train claim. Plaintiff has not refuted the fact that the K-9 had continual, and successfully completed, training from at least January 2005 through December 2008. There is no genuine issue of fact as to the failure to train claim, and summary judgment is appropriate on behalf of defendants.